### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------- x
ROYCE CORLEY,                   :
                               :
         Plaintiff,            :
                               :
v.                             :   Civil No. 3:22-cv-1007 (AWT)
                               :
UNITED STATES OF AMERICA,      :
                               :
         Defendant.            :
------------------------------- x
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States of America has moved for summary judgment in this Federal Tort Claims Act ("FTCA") action on the sole claim in plaintiff Royce Corley's Bifurcated Supplemental Complaint (ECF No. 1-1) (the "Complaint"). For the reasons set forth below, the defendant's motion for summary judgment is being granted.

### I.    FACTUAL BACKGROUND

Corley is a former inmate at FCI Danbury, where he was incarcerated from June 2014 until he was transferred to a different institution on September 11, 2018. This lawsuit concerns his medical care while he was at FCI Danbury.

#### A.    The Initial Action

In May 2018, Corley commenced a medical malpractice case under the FTCA claiming negligent dental care while at FCI Danbury (the "Dental Claims"). See Corley v. United States, No.

3:18-cv-922 (AWT) (the "Dental Case"). On April 1, 2019, Corley filed a motion to amend his complaint in the Dental Case to add new medical malpractice claims associated with various gastrointestinal issues (the "Gastrointestinal Claims"). The court dismissed the action on November 12, 2019. After an appeal and subsequent remand, the Dental Case became active again and pro bono counsel appeared on behalf of Corley on February 28, 2022.

The plaintiff then moved to sever the Gastrointestinal Claims. Pro bono counsel stated that its "representation [did] not extend to litigation of Mr. Corley's Gastro Claims," and that "[s]everance [was] therefore necessary to prevent anticipated prejudice from continued joinder, namely possible forfeiture of the preserved and viable Gastro Claims or alternatively loss of counsel." Pl. Royce Corley's Mem. of L. in Supp. of Mot. to Sever Claims Under Fed. R. Civ. P. 21 at 2, Dental Case (ECF No. 49-1) (the "Motion to Sever").[1] The court granted the Motion to Sever over the objection of the defendant and ordered that the Gastrointestinal Claims be docketed in a new action, which is this case.

B.    **The Gastrointestinal Claims**

The defendant has never had the plaintiff's medical records

---

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

in this case. See Def.'s Reply Br. in Supp. of Summ. J. (ECF No. 39) ("Def.'s Reply), at 6 n.6 ("[The] [p]laintiff did not produce any records . . . . Instead, he signed a medical records release and left it to Defendant to gather records, if any exist."). Consequently, the defendant's Statement of Material Facts with respect to the plaintiff's medical conditions is not based on the contents of the plaintiff's medical records. Rather, it is a statement of the allegations made by the plaintiff in the Complaint. Paragraphs 2 and 3 state:

> 2.    Plaintiff alleges that beginning in approximately June of 2015, while at FCI Danbury, he began experiencing symptoms including bloating, pain and discomfort, constipation and diarrhea, nausea, acid reflux, irritable bowel syndrome, and eosinophilic gastroenteritis. See Complaint [Dkt. #8] at ¶ 6. Plaintiff refers to these issues collectively as the "G.I. problems." Id.

> 3.    Plaintiff alleges that he began to seek treatment at health services at FCI Danbury on or about July 21, 2015, for the G.I. problems. Id. at ¶ 8. He received several tests which returned as "negative." Id.

Def.'s Local Rule 56(a)(1) Statement of Material Facts (ECF No. 27-2) ("DSF") ¶¶ 2-3. The plaintiff agrees that Paragraph 2 is undisputed. With respect to Paragraph 3, he disputes that he received several tests that returned as "negative," citing to Paragraph 16 of the Complaint. However, the defendant accurately describes the allegations in Paragraph 2, and, in addition,

includes the information that the plaintiff points to from
Paragraph 16 of the Complaint. See DSF ¶ 10.

Paragraphs 4 through 24 and 28 of the defendant's Statement
of Facts state:

> 4.  Plaintiff alleges that on or around August
>     11, 2015, he was treated with medications
>     including Ranitidine, Gas-X, Psyllium,
>     Docusate, Senna and other medications. Id.
>     at ¶ 9.
>
> 5.  Plaintiff alleges that after the medications
>     proved ineffective, he began keeping a food
>     journal. Id. at ¶¶ 10-11.
>
> 6.  Plaintiff alleges he reported his findings
>     to Health Services, but they refused to
>     recommend a special diet, and told him to
>     avoid troublesome foods. Id. at ¶ 12.
>
> 7.  Plaintiff alleges that on or about October
>     1, 2015, he received a referral to an
>     outside gastroenterology specialist. Id. at
>     ¶ 13.
>
> 8.  Plaintiff alleges that a few months later he
>     was taken to see Lorene D'Amato, a Physician
>     Assistant to Dr. Joseph Fiorito, and PA
>     D'Amato recommended daily probiotics to
>     regulate bowel movements before a scheduled
>     colonoscopy. Id. at ¶ 14.
>
> 9.  Plaintiff alleges that on or about April 13,
>     2016, PA Villa at FCI Danbury prescribed a
>     probiotic, but the probiotic was denied by
>     BOP. Id. at ¶ 15.
>
> 10. Plaintiff alleges that on June 28, 2016,
>     after a year of delay, Plaintiff received a
>     colonoscopy by GI specialist Dr. Fiorito
>     which discovered: "one (1) 2mm polyp in the
>     distal sigmoid colon, history of adenomatous
>     colonic polyp, internal hemorrhoids,

gastritis, dyspepsia, melena, mild reflux and mixed symptoms of IBS." Id. at ¶ 16.

11. Plaintiff alleges that Dr. Fiorito recommended psyllium fiber, MiraLAX, omeprazole, probiotics, and a low fermentable oligo-, di-mono-saccharides and polyols ("FODMAPs") diet, and a repeat colonoscopy in 2 years. Id. at ¶ 17.

12. Plaintiff alleges that following the colonoscopy, on July 21, 2016, BOP physician Dr. Greene designated him for the gastro Chronic Care Clinic, and he was given omeprazole and fiber, but not MiraLAX, probiotics, or the FODMAPs diet. Id. at ¶ 18.

13. Plaintiff alleges that on July 29, 2016, he had a CT scan conducted at Northeast Radiology that showed "large amounts of stool throughout [his] colon" and "mild thickening of the urinary bladder and grade 1 anterolisthesis of L5." Id. at ¶ 19.

14. Plaintiff alleges that after delays in treatment and refusal to adhere to Dr. Fiorito's recommendations, he filed a series of administrative remedies, but his requests were each denied. Id. at ¶ 20.

15. Plaintiff alleges that on or about December 8, 2016, his referral to a dietician was approved. Id. at ¶ 21.

16. Plaintiff alleges that from January 2017 through September 2018, he went to sick call regularly. Id. at ¶ 22.

17. Plaintiff alleges that he had a follow-up appointment with the outside gastroenterology specialist on March 8, 2017, where he reported worsening symptoms including blood in his stool, weight loss, pain in left-side of abdomen, rectal pain after defecating and lethargy. Id. at ¶ 23.

18.  Plaintiff alleges that on June 8, 2017, his abdomen was x-rayed revealing "scattered abdominal bowel gas." <u>Id.</u> at ¶ 24.

19.  Plaintiff alleges that he received a psychiatric evaluation on August 23, 2017, which showed no signs of mental illness, but there was a notation that he suffered emotional distress related to the G.I. problems. <u>Id.</u> at ¶ 25.

20.  Plaintiff alleges that on September 7, 2017, he had a telephone consultation with a BOP dietician who declined to issue a low-FODMAPs diet. <u>Id.</u> at ¶ 26.

21.  Plaintiff alleges that he was subsequently given medications including MiraLAX and dicyclomine. <u>Id.</u> at ¶ 27.

22.  Plaintiff alleges that on or about January 31, 2018, he began seeing BOP Dr. Tindel for his G.I. problems, and that although Dr. Tindel ordered probiotics and a gluten-free diet, they were denied. <u>Id.</u> at ¶ 28.

23.  Plaintiff alleges that in or about May 2018, he began requesting a second colonoscopy and requested to be evaluated for a condition known as "eosinophilic gastroenteritis" which he read about in an article. <u>Id.</u> at ¶ 29.

24.  Plaintiff alleges that he was transferred to FCI Petersburg on September 11, 2018. <u>Id.</u> at ¶ 30.

. . . .

28.  Plaintiff alleges that the United States breached the standard of care and caused him to suffer "years of" various gastrointestinal issues including "IBS, EGE, gastritis, kwashiorkor, malnutrition, hair loss, extreme intestinal, abdominal and colorectal pain with bleeding, weight loss (approx. 50 pounds), increased risk of

> colorectal cancer and severe emotional
> distress from fear of developing cancer or
> death." <u>Id.</u> at ¶ 35. He also alleges that
> BOP employees were acting within the scope
> of their employment. <u>Id.</u> at ¶ 34.

<u>Id.</u> ¶¶ 4-24, 28. These paragraphs are undisputed.

On March 5, 2018, the plaintiff filed an administrative
tort claim. He stated that the date of the claim was December
30, 2016. The basis of the claim and the nature of the claim
were as follows:

> FCI Danbury, Health Services failed to properly
> diagnose and timely treat the Claimant for his
> ailments and symptoms associated with gastritis and
> other gastrointestinal diseases and conditions.
> Claimant was not seen by a G.I. Specialist in over a
> year of delays from the initial complaint.
>
> . . . .
>
> Claimant has suffered extreme intestinal,
> stomach, abdominal and rectal pain, injuries and
> bleeding, due to delayed treatment and has increased
> risk of colorectal cancer and other serious ailments
> due to these delays.

DSF Ex. B (ECF No. 27-4), at 2.

On May 1, 2018, the plaintiff filed a second claim. He
stated that the date of the claim was April 6, 2018. The basis
of the claim and the nature of the claim were as follows:

> FCI Danbury, Health Services for over a year to
> the present, has denied the Claimant's requests for
> probiotics, probiotic containing foods, or to sell
> probiotic foods on commissary, despite a medical
> specialist's recommendation to provide probiotics to
> treat Claimant's medical conditions.
>
> . . . .

> Claimant has suffered extreme intestinal,
> abdominal and colorectal pain, with bleeding,
> emotional distress, weight loss (approx. 50 pounds),
> increased risk of colorectal cancer and other serious
> ailments.

Id. at 5.

On May 1, 2018, the plaintiff filed a third claim. He
stated that the date of the claim was May 1, 2018. The basis of
the claim and the nature of the claim were as follows:

> FCI Danbury, Food Services, for over a year to
> the present, has been serving low protein, high sodium
> and carbohydrate meals of low nutritional value, laced
> with saltpeter or a similar substance, which has
> contributed to Claimant's malnutrition, excessive
> commissary bills, gastritis and risk of cancer.
>
>         . . . .
>
> Claimant has suffered extreme weight loss
> (approx. 50 pounds), symptoms of kwashiorkor,
> malnutrition, hair loss, gastritis, lethargy, risk of
> colorectal cancer and emotional distress.

Id. at 8.

On May 1, 2018, the plaintiff filed a fourth claim. He
stated that the date of the claim was May 1, 2018. The basis of
the claim and the nature of the claim were as follows:

> FCI Danbury, Health Services, beginning Dec. 5,
> 2016, failed to provide a low-FODMAPs special diet,
> despite being informed by Claimant of difficulty
> digesting certain foods and recommendations from
> outside medical specialist to provide said diet.
>
>         . . . .
>
> Claimant has suffered extreme intestinal,
> abdominal and rectal pain, bleeding, emotional

> distress, unintentional weight loss (approx. 50
> pounds), increased risk of cancer and other serious
> ailments.

Id. at 11.

### C.    The Present Action

On December 5, 2022, the parties filed their Rule 26(f)
Report with a proposed schedule. The court stayed the case until
January 23, 2023 because the plaintiff indicated that he was in
the process of trying to obtain counsel. The plaintiff never
obtained counsel, and on October 6, 2023, the court referred the
case for a scheduling conference. On October 27, 2023, the
parties submitted a joint proposed schedule, which the court
approved. The court ordered that discovery be completed by May
15, 2024 and dispositive motions be filed by June 15, 2024. The
deadline for the plaintiff's expert disclosures was February 1,
2024. On February 1, 2024, Corley sent defense counsel a letter,
dated December 1, 2023, containing his proposed expert witnesses
and a damages analysis. It read, in pertinent part:

**[PROPOSED] EXPERT WITNESSES**

1.    Dr. Joseph J. Fiorito, MD
      Nuvance Health Medical Practice -
      Gastroenterology Danbury
      111 Osborne Street, 2nd Floor, Danbury, CT 06810
      (203) 739-7038

2.    Lorene S. D'Amato, PA
      Nuvance Health Medical Practice -
      Gastroenterology Danbury
      111 Osborne Street, 2nd Floor, Danbury, CT 06810
      (203) 739-7038

3.  Georgina Osorio, MD, MPH
    Institute for Advanced Medicine - Morningside
    Clinic
    440 West 114th Street, New York, NY, 10025
    (212) 523-6500

4.  Lisa Sanders, MD, FACP
    Yale Center for Infectious Disease - General
    Internal Medicine
    P.O. Box 208025, New Haven, CT 06520
    (203) 789-3764

5.  Dr. Patrick Choi, MD
    Harbor-UCLA Medical Center
    1000 West Carson Street, Torrance, CA, 90502
    (310) 222-2903

6.  Sofiya A. Greenberg, MD
    Northeast Radiology
    67 Sand Pit Road, Danbury, CT 06810
    (203) 797-1770

DSF Ex. D (ECF No. 27-6). Thus, the disclosure merely lists

names and addresses of six medical providers without any

explanation or detail.

On February 16, 2024, the parties filed a joint motion to

modify the schedule in this action. The parties stated:

> On February 1, 2024, (pro se) Plaintiff provided
> a document containing a Damages Analysis and a list of
> "Proposed Expert Witnesses." The list of "proposed"
> experts identified six (6) medical providers along
> with their addresses. However, the expert disclosure
> did not include any expert reports, or the other
> information required by Fed. R. Civ. P. 26(a)(2).
> Undersigned counsel for the Defendant contacted
> Plaintiff to advise him of the deficiencies with his
> expert disclosure, and the parties held a meet and
> confer telephone conference on February 7, 2024.
> During the conference, Plaintiff indicated that he now
> understood the Rule 26 disclosure requirements, but
> that he would need additional time to comply.

> Plaintiff also indicated that he was going to have to
> withdraw one of the six "proposed" experts because she
> indicated to him that she was not qualified.

ECF No. 20, at 2. The court granted the motion, and the
plaintiff's deadline to disclose experts became May 1, 2024. The
court set August 15, 2024 as the deadline for discovery and
September 16, 2024 as the deadline for dispositive motions.

On May 6, 2024, the plaintiff filed a motion seeking to
further extend the discovery deadlines by 90 days and asking the
court to appoint counsel for him. The defendant objected, and
the court sustained the objection and denied the motion.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such
issue warrant judgment for the moving party as a matter of law.
Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S.
317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22
F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry
of summary judgment . . . against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court
must respect the province of the jury. The court, therefore, may

not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the

substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical

doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial," Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (emphasis, quotation marks and citations omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Because the plaintiff is proceeding pro se, the court must read the plaintiff's pleadings and other documents liberally and construe them in a manner most favorable to the plaintiff.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (internal quotation marks and citations omitted), the district court must ensure that a pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id. at 620-21. Thus, the district court may itself notify the pro se plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id.

After reviewing the defendant's submissions in support of summary judgment and the plaintiff's submission in opposition to summary judgment in this case, the court concludes that the plaintiff understands the nature, consequences and obligations of summary judgement. First, the defendant served the plaintiff with the notice to <u>pro</u> <u>se</u> litigants required by Local Rule 56(b). Second, the defendant's memorandum states the nature and consequences of summary judgment. Third, the plaintiff has provided a Local Rule 56(a)(2) statement of undisputed material facts, in which the plaintiff affirmatively admits most, but not all, of the statements in the defendant's Statement of Material Facts. Fourth, the plaintiff has styled his opposition brief as one filed under Federal Rule of Civil Procedure 56(d), and he requests further discovery, demonstrating familiarity with the rules governing summary judgment. <u>See</u> Pl.'s Obj., at 1. Finally, while the plaintiff is proceeding <u>pro</u> <u>se</u>, his business is Corley Integrated Paralegal Services.

## III. DISCUSSION

The sole claim in the Complaint is one for medical malpractice and, under the circumstances of this case, the plaintiff cannot prove his claim without expert testimony. However, the plaintiff has not made any of the required disclosures with respect to expert testimony and is barred from using such testimony. In addition, the plaintiff is not entitled

to relief under Federal Rule of Civil Procedure 56(d).

**A.    The Plaintiff's Sole Claim Is for Medical Malpractice**

"[T]he FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 86 (2d Cir. 2012) (citing FDIC v. Meyer, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA." (alterations in original))). The plaintiff labels the sole claim in the Complaint as one for "Medical Malpractice, Negligence, Negligent Failure to Train, Recklessness and Emotional Distress Under Connecticut Law." Compl., at 6. "However, in evaluating the pleading, the court 'is not bound by the label affixed to that pleading by the party.'" Freeman v. United States, 166 F. Supp. 3d 215, 220 (D. Conn. 2016) (quoting Simoneau v. Stryker Corp., 3:13-cv-1200, 2014 WL 1289419, at *3 (D. Conn. Mar. 31, 2014) (quoting Votre v. Cnty. Obstetrics & Gynecology Grp., P.C., 113 Conn. App. 569, 576 (2009))), abrogated on other grounds by Corley v. United States, 11 F.4th 79 (2d Cir. 2021).

In Gold v. Greenwich Hospital Association, the Connecticut Supreme Court explained how to determine whether a claim sounds in medical malpractice:

> "The classification of a negligence claim as
> either medical malpractice or ordinary negligence
> requires a court to review closely the circumstances

under which the alleged negligence occurred.
[P]rofessional negligence or malpractice . . . [is]
defined as the <u>failure of one rendering professional
services</u> to exercise that degree of skill and learning
commonly applied under all the circumstances in the
community by the average prudent reputable member of
the profession with the result of injury, loss, or
damage to the recipient of those services." (Emphasis
in original; internal quotation marks omitted.) <u>Trimel
v. Lawrence & Memorial Hospital Rehabilitation Center</u>,
61 Conn. App. 353, 357–58, 764 A.2d 203, <u>appeal
dismissed</u>, 258 Conn. 711, 784 A.2d 889 (2001);
<u>Santopietro v. New Haven</u>, 239 Conn. 207, 226, 682 A.2d
106 (1996). "Furthermore, malpractice presupposes some
<u>improper conduct in the treatment or operative skill</u>
[or] . . . the failure to exercise requisite medical
skill. . . . From those definitions, we conclude that
the relevant considerations in determining whether a
claim sounds in medical malpractice are whether (1)
the defendants are sued in their capacities as medical
professionals, (2) the alleged negligence is of a
specialized medical nature that arises out of the
medical professional-patient relationship, and (3) the
alleged negligence is substantially related to medical
diagnosis or treatment and involved the exercise of
medical judgment." (Citation omitted; emphasis in
original; internal quotation marks omitted.) <u>Trimel v.
Lawrence & Memorial Hospital Rehabilitation Center</u>,
<u>supra</u>, at 358, 764 A.2d 203.

262 Conn. 248, 254 (2002) (emphasis in original).

A review of the Complaint shows that all of these three

requirements are satisfied here. Corley alleges that the United

States harmed him "by and through its employees, acting within

the scope of their employment . . . ." Compl. ¶ 34. With the

exception of the reference to Warden Williams in Paragraph 20 of

the Complaint, each of the employees of the United States named

in the Complaint is mentioned in connection with the plaintiff

reporting a medical problem; the plaintiff receiving, or not

receiving, medical treatment; the plaintiff being, or not being, prescribed medicine; the plaintiff undergoing a medical procedure or evaluation; the employee making a medical report; and/or the plaintiff attending sick call.

Corley alleges, with respect to the employees of the United States, that "their negligent and reckless acts and omissions breached the standard of care in the community, from failure to train and the complete disregard for the health of the Plaintiff." Id. He alleges that he regularly attended sick call to express frustrations to Health Services about inadequate medical treatment, delays and worsened conditions." Id. ¶ 22. He also alleges that the defendant "has failed to fully staff its Health Service Departments bureau-wide, which has contributed to delays, incompetence, rushed diagnosis and deliberate indifference to the medical care of the prison population as a whole." Id. ¶ 33.

In addition, the plaintiff alleges that the United States, "by and through its employees acting within the scope of their employment, caused the Plaintiff to suffer years of IBS, EGE, gastritis, kwashiorkor, malnutrition, hair loss, extreme intestinal, abdominal and colorectal pain with bleeding, weight loss (approx. 50 pounds), increased risk of colorectal cancer and severe emotional distress from fear of developing cancer or death." Id. ¶ 35.

The "[p]laintiff concedes that [] most of the claims asserted in the complaint sound in medical malpractice," but he contends that he has pled other claims for "overall negligence from delays and/or failure to treat the Plaintiff at all." Pl.'s Obj., at 6. He argues that these other claims "fall under the doctrine of res ipsa loquitur" and thus are not medical malpractice claims. Id. at 7. However, "[r]es ipsa loquitur certainly is not an independent cause of action but only a doctrine of evidence and thus not separate from a negligence claim." White v. Mazda Motor of Am., Inc., 313 Conn. 610, 627 (2014) (quoting Benoit v. Athanasiadis, No. CV-12-6013227, 2012 WL 6123206, at *2 (Conn. Super. Ct. Nov. 16, 2012)). The only negligence alleged in the Amended Complaint sounds in medical malpractice.

Thus, under Connecticut law, the plaintiff's claim sounds in medical malpractice.

**B.    Expert Testimony Is Necessary to Prove the Plaintiff's Claim, But He Cannot Provide It**

**1.    Testimony of an Expert Witness Is Necessary**

"A physician is under a duty to his patient to exercise that degree of care, skill and diligence which physicians in the same general neighborhood and in the same general line of practice ordinarily possess and exercise in like cases." Fitzmaurice v. Flynn, 167 Conn. 609, 616 (1975) (internal

quotation marks and citation omitted). "[T]o prevail in a
medical malpractice action, the plaintiff must prove (1) the
requisite standard of care for treatment, (2) a deviation from
that standard of care, and (3) a causal connection between the
deviation and the claimed injury." Gold, 262 Conn. at 254-55
(quoting Amsden v. Fischer, 62 Conn. App. 323, 331 (2001)).

With respect to the first two elements of a claim for
medical malpractice, i.e., the standard of care and breach of
that standard of care:

> To recover in a malpractice action against a
> physician the plaintiff must prove that the defendant
> failed to exercise that degree of care, skill or
> diligence ordinarily had and exercised by physicians
> engaged in the same line of practice in the general
> neighborhood where the treatment complained of was
> administered. . . . Ordinarily this proof must rest
> upon the testimony of an expert witness who is
> qualified to express an opinion as to the standard of
> care customarily exercised by physicians in the
> general neighborhood with reference to the diagnosis
> and treatment of the disease with which the plaintiff
> was afflicted. It is ordinarily requisite that such an
> expert testify that the defendant's conduct did not
> measure up to that standard. . . . It is only in a
> case where there is manifest such obvious gross want
> of care or skill as to afford, of itself, an almost
> conclusive inference of want of care that the
> testimony of an expert witness is not necessary.

Ardoline v. Keegan, 140 Conn. 552, 556-57 (Conn. 1954)
(citations omitted). See also Doe v. Yale Univ., 252 Conn. 641,
687 (2000) ("Except in the unusual case where the want of care
or skill is so gross that it presents an almost conclusive
inference of want of care . . . the testimony of an expert

-20-

witness is necessary to establish both the standard of proper

professional skill or care on the part of a physician . . . and

that the defendant failed to conform to that standard of care."

(citations omitted)).

With respect to the third element of a claim for medical

malpractice, i.e., a causal connection:

> The plaintiff must prove not only a violation of a
> standard of care as a wrongful act, but also a causal
> relationship between the injury and the resulting
> [injury]. . . . The malpractice alleged here must be
> the cause of [the injury] and not a mere incident in a
> chain of events. "If the chain of causation of the
> damage, when traced from the begin[n]ing to the end,
> includes an act or omission which, even if wrongful or
> negligent, is or becomes of no consequence in the
> results or so trivial as to be a mere incident of the
> operating cause, it is not such a factor as will
> impose liability for those results." . . . Moreover,
> evidence showing an act of malpractice to be the cause
> of [injury] "would have to be introduced through an
> expert witness."

Grody v. Tulin, 170 Conn. 443, 448–49 (1976) (citations

omitted).

> "An exception to the general rule [requiring] expert
> medical opinion evidence . . . is when the medical
> condition is obvious or common in everyday life. . . .
> Similarly, expert opinion may not be necessary as to
> causation of an injury or illness if the plaintiff's
> evidence creates a probability so strong that a lay
> jury can form a reasonable belief. . . . Expert
> opinion may also be excused in those cases where the
> professional negligence is so gross as to be clear
> even to a lay person." (Citations omitted; internal
> quotation marks omitted.) Kalams v. Giacchetto, 268
> Conn. 244, 248 n. 4, 842 A.2d 1100 (2004).

Boone v. William W. Backus Hospital, 272 Conn. 551, 567 (2005).

In Boone, the Connecticut Supreme Court gave examples of scenarios where expert testimony would not be required because the medical malpractice was so apparent as to be clear even to a layperson:

> "In this state, decisions indicating that the exception to the general requirement of expert testimony in medical malpractice cases might be applicable have involved foreign objects discovered in the body of a patient after surgery or abnormal injuries sustained during surgery. [Puro v. Henry, 188 Conn. 301, 308, 449 A.2d 176 (1982)] (needle found in patient after hernia operation); Console v. Nickou, 156 Conn. 268, 274–75, 240 A.2d 895 (1968) (needle left in patient after delivery of child); Allen v. Giuliano, 144 Conn. 573, 575, 135 A.2d 904 (1957) (lacerations to patient's leg in removal of cast); Slimak v. Foster, 106 Conn. 366, 370, 138 A. 153 (1927) (piece of surgical instrument left in patient after nose operation). In other jurisdictions, courts have found the jurors' common knowledge adequate for understanding the basis for the malpractice claim without expert testimony in a variety of circumstances [where the defendant's breach of the standard of care was obvious]. LaRoche v. United States, 730 F.2d 538, 541 and n. 5 (8th Cir. 1984) (placing permanent fillings in teeth that dentist should have known were infected); Carlsen v. Javurek, 526 F.2d 202, 207–208 (8th Cir.1975) (dispute as to whether nurse-anesthetist had used anesthetic that surgeon had instructed her not to use); Gault v. Poor Sisters of St. Frances Seraph of the Perpetual Adoration, Inc., 375 F.2d 539, 540 (6th Cir. 1967) (administration of wrong medication because containers appeared similar)." Bourquin v. B. Braun Melsungen, 40 Conn.App. 302, 314–15, 670 A.2d 1322, cert. denied, 237 Conn. 909, 675 A.2d 456 (1996).

272 Conn. at 567–68.

Corley is required to provide expert testimony to prove his medical malpractice claim. Comparison of the plaintiff's claims

with the situations described in <u>Boone</u> shows that Corley's claim is not one involving a medical condition that is obvious or common in everyday life, involving causation of an injury or illness that would most likely be apparent to a layperson, or involving professional negligence that is so gross as to be clear to a layperson. Rather, such a comparison highlights the fact that the plaintiff's claimed combination of medical conditions is not obvious or common in everyday life, as well as the fact that the claimed medical malpractice is sufficiently removed from being so gross as to be clear even to a layperson so as to make expert testimony necessary.

The plaintiff claims he suffered from multiple conditions, over the course of more than three years, for which he was seen by at least nine medical professionals. He "believes these conditions may be related to: (a) pesticides (e.g. rat poison, roach spray, etc.) administered in the food services area (which may have contaminated the food and cooking facilities); (b) contaminated water due to old and faulty sewage system; (c) radiation, given a recently released inmate reporting high levels of radiation in his body from outside medical tests; and/or (d) other environmental hazards at Danbury, associated with black mold, animal waste and other unsanitary conditions discovered in food services and the adjacent auditorium." Compl. ¶ 7. He has asserted that FCI Danbury Food Services served him

meals that contributed to his gastritis and risk of cancer. The treatment the plaintiff received included medical tests, experimental drugs, a colonoscopy, a CT scan, an x-ray, and a psychiatric evaluation. He states that he "suffer[ed] years of IBS, EGE, gastritis, kwashiorkor, malnutrition, hair loss, extreme intestinal, abdominal and colorectal pain with bleeding, weight loss (approx. 50 pounds), increased risk of colorectal cancer and severe emotional distress from fear of developing cancer or death." Compl. ¶ 35. Thus, the plaintiff's claim is not analogous to any of the scenarios described in Boone.

### 2. The Plaintiff Has Not Disclosed a Witness Who Can Provide Expert Testimony

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. It distinguishes between witnesses who must provide a written report and witnesses who do not provide a written report. As to disclosure of witnesses who must provide a written report, "this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). "[I]f the witness is not required to provide a written report [under subsection B], this disclosure must state: (i) the subject matter on which the witness is

expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

The plaintiff concedes that he has not complied with Rule 26(a)(2)(B) because he has not provided a written report with respect to any expert he has identified. But he contends that "[a]ll of the proposed expert witnesses are also fact witnesses that clinically evaluated the Plaintiff's injuries and none were specially retained to provide expert testimony. Therefore, said witnesses could be treated as experts under Fed. R. Civ. P. 26 (a)(2)(C) ('Witnesses Who Do Not Provide a Written Report')." Pl.'s Obj., at 7.

However, the plaintiff has not made the required disclosure under Federal Rule of Civil Procedure 26(a)(2)(C) either, because his disclosure does not include the information called for by that rule. In Kaganovich v. McDonough the court explained:

> [A]lthough the rules permit an aggrieved plaintiff to call his treating physician as an expert witness, they do not provide a testimonial blank check. The law is quite to the contrary. In order for a plaintiff to call his treating physician as an expert witness at trial, he must follow the expert disclosure rules set forth in Federal Rule of Civil Procedure 26(a)(2). Although a plaintiff need not submit a full expert report from a treating physician under Rule 26(a)(2)(B), which applies to experts retained specifically for trial, he must comply with

> the lesser requirements of Rule 26(a)(2)(C), which
> require disclosure of "(1) the subject matter on which
> the physician is expected to testify, and (2) a
> summary of the facts and opinions to which the
> physician is expected to testify."

547 F. Supp. 3d 248, 274 (E.D.N.Y. 2021) (citation omitted). The

court explained further:

> In determining whether these disclosures satisfy
> Rule 26(a)(2)(C), "[u]ltimately, the question is
> whether the disclosure provides 'sufficient detail to
> permit defendants to prepare their defense.'" McAfee
> v. Naqvi, No. 14-CV-410 (VAB), 2017 WL 3184171, at *5
> (quoting Anderson v. E. CT Health Network, Inc., No.
> 12-CV-785 (RNC), 2013 WL 5308269, at *1 (D. Conn.
> Sept. 20, 2013)). Courts have found, therefore, that a
> "mere list of names, accompanied by three-word
> descriptions of the subject matter of their testimony"
> is not sufficient. Barack v. Am. Honda Motor Co.,
> Inc., 293 F.R.D. 106, 108 (D. Conn. 2013). . . . Nor
> is Rule 26(a)(2)(C) satisfied where "the description
> does provide the general subject matter of [the
> doctor's] proposed testimony" but "provides no
> indication--beyond 'mere generalities'--of the
> specific facts to which [the doctor] intends to
> testify and provides bare-minimum details of opinions
> formed therefrom." [Olutosin v. Gunsett, No. 14-cv-685
> (NSR), 2019 WL 5616889, at *6 (S.D.N.Y. Oct. 31,
> 2019)] (quoting McAfee, 2017 WL 3184171, at *6).

Id. "[T]o the extent a treating physician testifying as an

expert intends to comment on matters beyond the scope of his or

her patient's treatment, the basis for that testimony must be

readily apparent from the Federal Rule of Civil Procedure

26(a)(2)(C) disclosure and summary." Rodriguez v. Village of

Port Chester, 535 F. Supp. 3d 202, 215 (S.D.N.Y. 2021).

The plaintiff's disclosure dated December 1, 2023 does not

satisfy the requirements of either prong of Rule 26(a)(2)(C). He

lists six proposed expert witnesses and simply provides their names, addresses, and telephone numbers. There is no effort at all to identify the subject matter of their testimony, much less to give the required summary.

In his opposition, the plaintiff makes an additional disclosure he contends satisfies the requirements of Rule 26(a)(2)(C). The additional disclosure is as follows:

> (1) Dr. Joseph J. Fiorito, MD and Lorene S. D'Amato, PA (Gastroenterologists) would testify as to their clinical[] findings after physically evaluating the Plaintiff. Explain why they prescribed probiotics, Low-FODMAPs diet and other medications, and give expert opinion as to what may have caused Plaintiff's gastritis, colorectal polyps and other ailments; and

> (2) Dr. Patrick Choi, MD and Sofiya A. Greenberg, MD (Radiologists) would testify as to the clinical[] findings in their reports and explain to the fact finders what these findings mean in layman's terms.

Pl.'s Obj., at 8. This untimely additional disclosure also fails to satisfy the requirements of Rule 26(a)(2)(C). With respect to Dr. Fiorito and P.A. D'Amato, the plaintiff discloses "the subject matter on which the physician is expected to testify,"[2] but he does not provide "a summary of the facts and opinions to which the physician is expected to testify." Kaganovich, 547 F. Supp. 3d at 274. "Rule 26(a)(2)(C) [is not] satisfied where 'the

---

[2] Lorene D'Amato is a physician assistant, but Conn. Gen. Stat. § 52–184c "require[es] expert witnesses to be similar healthcare providers" to the one whose conduct is in question. Law, 116 F. Supp. at 307. Although the plaintiff has alleged that multiple employees of the United States have committed medical malpractice, D'Amato cannot establish the negligence of any physician because she is not similarly "experienced or board certified." Id.

description does provide the general subject matter of [the doctor's] proposed testimony' but 'provides no indication-- beyond "mere generalities"--of the specific facts to which [the doctor] intends to testify and provides bare-minimum details of opinions formed therefrom.'" Id. (citation omitted). The plaintiff does not "provide[] 'sufficient detail to permit defendants to prepare their defense.'" Kaganovich, 547 F. Supp. 3d at 274 (quoting McAfee, 2017 WL 3184171, at *5). Nor does this paragraph differentiate between the two named witnesses (even though only one of them is a physician), despite the fact that the rule requires disclosures with respect to "the witness."

For the same reasons, the disclosure with respect to Dr. Choi and Dr. Greenberg also fails to satisfy the requirements of Rule 26(a)(2)(C).

Based on the allegations in the Complaint, Dr. Fiorito, P.A. D'Amato, Dr. Choi,[3] and Dr. Greenberg all treated or provided medical services to the plaintiff while he was incarcerated at FCI Danbury. See Compl. ¶¶ 14, 16, 17, 19, 23, 24.[4] Thus, they could be "fact witnesses who testify solely as to

---

[3] The court notes that defense counsel stated in a letter to the plaintiff: "I sent a med records request to Dr. Patrick Choi in California and was told there are no records of him treating you." Def.'s Mot. to Compel, Ex. C (ECF No. 28-3), at 1.

[4] The defendant's Statement of Material Facts paraphrases the Complaint, and does not in all instances identify the medical providers who are named in the Complaint.

their personal knowledge of their patient's treatment."
Rodriguez, 535 F. Supp. 3d at 214. But, as discussed in Part
III.B.1 above, expert testimony is necessary in order for Corley
to prove his medical malpractice claim, and Corley has not made
the required disclosure with respect to any of these medical
providers.

### 3.    The Plaintiff's Use of Expert Testimony Is Barred by Rule 37(c)(1)

Because the plaintiff has failed to make the required
disclosure with respect to any expert witness, Rule 37(c)(1)
bars the use of expert testimony to support his claim. "If a
party fails to provide information or identify a witness as
required by Rule 26(a) or (e), the party is not allowed to use
that information or witness to supply evidence on a motion, at a
hearing, or at a trial, unless the failure was substantially
justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The
purpose of this rule is to prevent the practice of sandbagging
an opposing party with new evidence." Rodriguez, 535 F. Supp. 3d
at 209 (internal quotation marks and citations omitted). "The
party that fails to comply with Rule 26(a) or (e) bears the
burden of proving both that its non-compliance was substantially
justified, and that it was harmless." Id. at 209–10 (citing
Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v.
Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)).

The plaintiff cannot meet this burden. The Complaint was docketed on July 27, 2022. The parties filed their Rule 26(f) Report on December 5, 2022. That report included a May 1, 2024 deadline for all discovery, including depositions of expert witnesses. It also contained a request by the plaintiff to have all deadlines stayed for 90 days to give him an opportunity to obtain counsel. On January 23, 2023 the plaintiff filed a status report stating that he "ha[d] been unsuccessful with retaining counsel." ECF No. 13. He "request[ed] that the Court make a referral for representation at the Court's discretion; otherwise the Plaintiff is prepared to move forward with this matter pro se." Id. The court concluded that this was not a case where appointment of counsel was appropriate. See Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) ("In deciding whether to appoint counsel . . . the district judge should first determine whether the indigent's position seems likely to be of substance."). After there had been no activity for several months, the court referred the plaintiff and counsel for the defendant for a case management conference, which resulted in the parties filing a proposed scheduling order. That proposed scheduling order included a deadline of February 1, 2024 for the plaintiff to disclose his expert witnesses. The court approved the parties' proposed scheduling order and ordered that all discovery be completed by May 15, 2024 and that dispositive

motions be filed by June 15, 2024.

On February 1, 2024, the plaintiff provided defense counsel with the letter dated December 1, 2023 and containing a list of proposed expert witnesses and a damages analysis. This letter led to the February 16, 2024 Joint Motion to Modify Schedule. That joint motion makes it clear that the plaintiff, who had been aware of the deadline for disclosing expert witnesses since December 5, 2022, understood the disclosure requirements under Rule 26(a)(2) because they were discussed with defense counsel during a telephone conference. The court extended the deadline for the plaintiff to disclose expert witnesses from February 1, 2024 to May 1, 2024. The court also extended the deadline for discovery to August 15, 2024 and the deadline for dispositive motions to September 16, 2024.

Despite the two additional 90-day extensions, the plaintiff did not make the required expert disclosures. Rather, on May 6, 2024 he filed a motion for assignment of counsel. He stated that he had been "trying to obtain an expert witness by: (a) contacting various law firms for assistance; (b) contacting expert witness referral services; (c) contacting fact witnesses mentioned in the complaint that would qualify as experts; and (d) contacting various academics to review the claims." ECF No. 22, at 1. He asked for an extension of the discovery deadlines for another 90 days. The defendant objected, asserting among

other things that the <u>pro se</u> plaintiff, who is a paralegal, has
been aware since at least April 2019 that he needed an expert to
support his claims in this case. <u>See</u> ECF No. 23, at 3. The court
denied the plaintiff's motion for an extension of time.

During the extended discovery period, the defendant
requested information regarding the plaintiff's medical
treatment in a May 24, 2024 interrogatory. The plaintiff's
response was deficient, and the court eventually granted the
defendant's motion to compel and ordered the plaintiff to give
proper responses to that interrogatory and other discovery
requests by November 19, 2024. The defendant's September 13,
2024 letter to the plaintiff, submitted in support of the motion
to compel, stated:

> This request asks you to identify health care
> providers from whom you sought or who rendered you
> care for any of the injuries at issue in this case.
> But importantly, this request also asked you to
> provide information regarding the providers including
> which injury/complaint they addressed, when that
> treatment took place, whether you received and
> diagnosis, and whether you are still under the care of
> these providers. Your response merely provided names
> and addresses and did not state the additional
> information.

Def.'s Mot. to Compel, Ex. C (ECF No. 28-3), at 1. Despite being
ordered by the court to provide this information, the plaintiff
failed to do so. He merely included the deficient supplemental
disclosure in his November 25, 2024 opposition to the motion for
summary judgment and asked for more time.

With respect to the expert witness referral services the plaintiff referred to in his May 6, 2024 motion, the plaintiff states in his opposition that the expert witness referral agencies he contacted wanted substantial retainer fees just to find expert witnesses. See Pl.'s Obj., at 5 ("Of the expert witness referral agencies, every one of them wanted substantial retainer fees just to find the expert witness which did not include the total cost of the expert evaluating the case."). He also states that "such expenses are far beyond the Plaintiff's extremely modest annual salary." Id. He attaches to his opposition only an excerpt from correspondence with one expert witness referral service, in which he informs the service that "your costs are way too high for our budget." Pl.'s Obj. Ex. A (ECF No. 38-1), at 2.

Thus it is apparent that the plaintiff has been unable to obtain counsel who will represent him for free and has also been unable to locate and hire an expert witness he can afford who would give testimony in support of his claim in this case. His inability to do so does not constitute a substantial justification for failing to disclose an expert witness.

Nor has the plaintiff shown that his noncompliance with Rule 26(a) was harmless. The defendant has been defending against the Gastrointestinal Claims since April 1, 2019, which includes the appeal. The court granted, over the objection of

the defendant, the motion to sever the Gastrointestinal Claims from the Dental Claims. After confirming that the plaintiff understood his discovery obligations with respect to disclosing experts, and agreeing to an extension of time to give the plaintiff time to comply with those obligations, the defendant expended resources to prepare and file a motion for summary judgment based on the plaintiff's failure to comply with those discovery obligations. The defendant did so only after attempting to reach a global settlement of the Dental Claims and the claims in this case; this was rejected by the plaintiff. Now the plaintiff states that he needs "at least three (3) months to retain [an] expert witness (if necessary) and an additional six (6) months to complete fact discovery." Pl.'s Obj., at 10 (emphases omitted). The plaintiff has not shown how, under these circumstances, requiring the defendant to expend the resources necessary to continue to defend against the Gastrointestinal Claims would be harmless.

## C.    Request for Relief Under Rule 56(d)

The plaintiff requests that the court defer considering the defendant's motion for summary judgment, or deny it, and "allow [him] time to obtain affidavits or declarations or to take discovery." Pl.'s Obj., at 1. Rule 56(d) provides:

> (d)    <u>When Facts Are Unavailable to the Nonmovant</u>. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court
may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or
    declarations or to take discovery; or

(3) issue any other appropriate order.

Thus, "[w]hen a party facing an adversary's motion for summary
judgment reasonably advises the court that it needs discovery to
be able to present facts needed to defend the motion, the court
should defer decision of the motion until the party has had the
opportunity to take discovery and rebut the motion." Elliott v.
Cartagena, 84 F.4th 481, 493 (2d Cir. 2023) (internal quotation
marks and citation omitted).

    However, this is not a situation where a plaintiff seeks an
opportunity to take discovery for the purpose of rebutting the
motion. Rather, Corley seeks additional time in which to find an
expert who would testify in his favor. Thus, the plaintiff seeks
additional time to prepare his case, or, more accurately, to
determine whether he has a case--because he has never shown that
any expert would testify in his favor. That is not a proper
ground for relief under Rule 56(d). See Paddington Partners v.
Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) ("Econocom's
argument is that it should be allowed to find out if it has a
claim, rather than that it has a claim for which it needs
additional discovery. Such divagation is decidedly not the

object of the discovery procedures outlined in the Federal Rules
of Civil Procedure."); Robinson v. Allstate, 706 F. Supp. 2d
320, 329 (W.D.N.Y. 2010) ("A continuance under [Rule 56(d)] is
not a license to go fishing for evidence, in the hope of finding
something that will support one's claims."), aff'd sub nom.
Robinson v. Allstate Ins. Co., 508 F. App'x 7 (2d Cir. 2013).

Moreover, even if Corley's request could be characterized
as falling within the scope of Rule 56(d), he has not complied
with the requirements of that rule.

> A party resisting summary judgment on the ground that
> it needs additional discovery in order to defeat the
> motion must submit an affidavit pursuant to Federal
> Rule of Civil Procedure 56(d) (formerly Rule 56(f)),
> showing: "(1) what facts are sought and how they are
> to be obtained, (2) how those facts are reasonably
> expected to create a genuine issue of material fact,
> (3) what effort affiant has made to obtain them, and
> (4) why the affiant was unsuccessful in those
> efforts."

Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 13 (2d Cir.
2013) (summary order) (quoting Meloff v. New York Life Insurance
Co., 51 F.3d 372, 375 (2d Cir. 1995)). The plaintiff has not
submitted an affidavit, as required by Meloff. In addition, none
of his statements or arguments in his opposition suggest that he
could submit an affidavit that would justify granting him relief
under Rule 56(d). This is not surprising. The plaintiff failed
to comply with the court's order granting the defendant's motion
to compel, when the information identified in the defendant's

September 13, 2024 letter was within the plaintiff's control and could have been provided by him without the assistance of an expert. In addition, the "[p]laintiff has failed to serve or take any fact discovery. Plaintiff took no depositions." Def.'s Reply, at 9. This case is similar to the request by the plaintiff in Rodowicz v. Feldman, Perlstein & Greene, LLC, where the court found:

> Rodowicz thus had some two years of discovery proceedings to do the necessary research and obtain an expert witness, and at no point during this period did he identify any expert witnesses or detail efforts to obtain such a witness. Further, Feldman's motion for summary judgment put him on notice of the issue and, even then, he still did not obtain an expert. Under the circumstances, the district court did not abuse its discretion [in denying Rodowicz's Rule 56(d) request] because Rodowicz did not: (1) file a Rule 56(d) affidavit presenting the necessary information, (2) show good cause for his delay, (3) identify an expert who would testify for him, or (4) demonstrate that prejudice would result if an extension were not granted because he has never shown that an expert would testify in his favor.

No. 24-997, 2025 WL 964934 (2d Cir. Mar. 31, 2025).

Therefore, the plaintiff's request for relief under Rule 56(d) should be denied.

## IV.  CONCLUSION

For the reasons set forth above, the defendant's Motion for Summary Judgment (ECF No. 27) is hereby GRANTED. The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.

Dated this 23rd day of June 2025, at Hartford, Connecticut.

                                    /s/AWT
                          ———————————————————————
                               Alvin W. Thompson
                          United States District Judge